5-1632, United States of America v. Green. Mr. Ullman. Thank you, Your Honors. May I please report? Jason Ullman on behalf of Mr. Cornelius Green. Could I reserve three minutes for rebuttal, please? That's granted. Thank you. And with me at council table is an investigator from my office, former police officer, avid competition shooter, Matthew Chappell. If I butcher anything technical, I will be sure to clean it up on rebuttal with the court. I want to focus the court's attention, I believe, on three matters today that are driving this case. The first one is that I believe McIntosh and Application Note 2 are what we're to control the analysis here. And Application Note 2's guidance that the firearm has the ability to fire many rounds without reloading because, at the time of the offense, in the firearm attached to it or in close proximity is a magazine or other device capable of holding 16 rounds or more. Did the district court make a finding that a large capacity magazine was attached to the rifle that Mr. Green possessed? I do think that closely reading the sentencing transcript, it looks like the district court says it's capable of accepting that's what controls the analysis. I think I'm bound by McIntosh. I think you're right. A fine reading of the district court's analysis, I'm not clear that a factual finding on that was made. But of course, the record speaks for itself. If the record says otherwise, then I seem to be corrected. So I'm a little confused about what the parties and maybe the district court thought it was bound by exactly as to McIntosh. Because McIntosh says that Application Note 2 is entitled to controlling weight. And it sort of makes that statement broadly. But all of the discussion in McIntosh is about what large capacity means and whether, you know, 15 plus is large capacity. It doesn't even mention, you know, whether the magazine is attached or in close proximity. So is it your view that McIntosh says the entirety of Application Note 2 is entitled to controlling weight? To be candid with your honor, I have a difficult time understanding how the Kaiser analysis works from this point on. In McIntosh, I have a difficult time understanding whether the court is saying Application Note 2 controls completely, or if it just controls on the narrow question of 16 rounds or more. Well, but to Judge Freeman's point, I don't know that anything but the definition of a large capacity magazine was at issue in McIntosh. The parties agreed that there was a magazine and that it had 16 rounds in it. And so as I read McIntosh, the only question that was presented was, well, what is a large capacity magazine? And is it this thing that everybody agrees that the defendant possessed? But yeah, and maybe you agree that questions beyond that were just simply outside of the scope of McIntosh, or I think that's your mentor. I have a difficult time understanding where district courts are supposed to go with a case like McIntosh, if they're supposed to read this guideline, this enhancement, and say all of Application Note 2 controls, or just on these 16 rounds or more. To the extent that we're questioning whether McIntosh says all of Application Note 2 controls, I think that it should. I think that all of Application Note 2 does control. But first, I take your point to be saying maybe McIntosh didn't answer all of the questions presented by 2K2.1. 2K2.1 doesn't just speak of large capacity magazines. It talks about a semi-automatic firearm capable of accepting a large capacity magazine. And so if before we get to the Application Note, wouldn't we have to figure out whether that phrase, capable of accepting a large capacity magazine, is sufficiently ambiguous under the Kaiser toolbox that we have to defer? Or if it's subject to an ordinary understanding, then that ordinary understanding controls. So two responses to that, Your Honor. The first is that I think a lot of people are reading McIntosh to say Application Note 2 controls. I don't think that that fine parsing of the guidelines text is occurring. I think that reading McIntosh, it looks like Application Note 2 controls. To the extent, and this is the second part of the response, to the extent that there is that question, I think that there is ambiguity in the text where the text says the offense involved, dot, dot, dot, capable of accepting. And when we're talking about capable of accepting, there is an ambiguity there. Is it realistically capable of accepting in this offense? Or is it theoretically, is it possibly capable of accepting? And Your Honor, your concurrence. I hear you. I mean, there are perhaps some semantic ambiguity here, but that might strain the ordinary understanding of the word capable. I mean, then it means, is it a semi-automatic firearm possible, capable of accepting in large capacity magazine? Whatever that is. But as to that, we at least could say, well, we know large is not standard. We happen to know what this firearm comes standard with. If it takes something that is higher than the standard that accompanies its sale, then it's capable of accepting it. And that would eliminate both the ambiguity in theory and then its application of fact, right? I respectfully disagree with that, Your Honor. And the reason is this. I mean, reading your concurrence in Macintosh, we know that there are all kinds of post-manufacturing modifications that can be made on pretty much any semi-automatic firearm these days. I mean, if we're looking at theoretical capability, Your Honor, then if this offense, green, holding a rifle on video in an FFL gun store, if this had occurred in New Jersey, then under your reading where we're talking about theoretical capabilities, New Jersey has a capacity limitation, right? 10 rounds or less. If he's holding this firearm in New Jersey, where it is impossible for it to be a 20-round magazine because New Jersey has capacity limits in these FFL gun stores, you can't touch a 20-round magazine in New Jersey. If we're talking about theoretical capability, then he still gets this large capacity magazine enhancement, even if it's the exact same crime in Jersey where it is impossible. Well, it's not impossible. It's just a legal counsel, right? I mean, I don't think that makes it impossible. And you could argue that's the very reason why the enhancement, the Sentencing Commission may have wanted the enhancement to apply. I respectfully disagree with that. The entire thrust of Chapter 2 and Chapter 3 in this book is how did this offense occur here? What is the offense level? What is the harm caused by this offense and how it was committed by this defendant? That's all of Chapter 2. That's all of Chapter 3. And if we're going to take this theoretical possibility stance on large capacity magazines, then we're not even, we're no longer looking at- We have to take the language as the Sentencing Commission has drafted it. And I hear your point that maybe given the advancements in firearm technology, it winds up being that almost any semi-automatic weapon, handgun or long, could accept a magazine of almost any limits up to the physical ability of pushing up the cartridges. But isn't that something for the Sentencing Commission to revise then if they don't want it to apply that broadly? I mean, sometimes technology changes and we wind up with a different standard, but I don't know that that means we have to then read the language in an unnatural way. I understand you disagree with that last part there, but assuming that it did, then that seems like it can be easily addressed by the commission changing the standard. Well, I respectfully disagree, Your Honor. And the first point is that there's additional language in the text of the guideline. It doesn't just say any semi-automatic firearm, because we know that pretty much any can have a post-manufacturing modification to accept a large capacity magazines. So go ahead and just delete that whole language of, that is capable of accepting a large capacity magazine. If that's the thrust of what the Sentencing Commission wanted to do, that reading of theoretical possibility actually requires deleting text from the guideline. Delete the words, that is capable of accepting a large capacity magazine. That's interesting, because I thought your argument was more focused on offense involved, and that the reality that you're arguing for, the work is done by offense involved. So even if any firearm is capable with a post-market modification, you have to understand whether the offense involved a realistic probability. I thought that's where you were going. Agreed, Your Honor, agreed. The offense involved has ambiguity in it, that text there. And then I think when we're trying to look at this offense involved, there's your hook for, we're looking at realistic probability, or realistic capable. Can I ask you something a little different? Both you and your colleagues adopted Macintosh as controlling, and no one argued below or here that Macintosh doesn't control. So do we just simply ignore this whole debate and just decide if it was applied accurately or correctly? I think that's a plausible way to handle this case, Your Honor. Yes, because it looks like Macintosh is controlling. The way I read Macintosh, I think application no controls. I didn't see limiting language. But even if we were to disagree with you, since both you and your colleague did not raise it, do we only answer the question whether or not the application note was applied correctly? I do not know the answer to that, Your Honor. I can understand the inclination that the court would want to perform the Kaiser analysis to ensure that it is appropriately deferring when it's appropriate to do that. I understand the court wanting to do that sua sponte, but I also understand as a point of judicial discretion that it's a point not raised, and that we both agree application no controls, and that should, I would think, bind the analysis here. I don't know the answer to your question. Fair enough. If we agree with your argument and the case is remanded for resentencing, what's going to happen? I think that the base offense level will start out lower because I don't think that the government proved that a large capacity, that a 16-round or more magazine was attached or in close proximity. But they'd have an opportunity to do that, I assume. I would respectfully request a Dickler closed record on remand. I mean, Dickler, Roe, those cases are clear. This court has been saying it since Dickler, which I believe was in the early 2000s or the 90s, that if the government has the burden of proof and persuasion on an enhancement, it knows its burden. There aren't surprises here. The government has the burden on appeal to establish why it defaulted on its evidentiary burden in the first instance. This court has a strong, sorry, may I just briefly, this court has a strong preference for not giving the government a second bite at the apple when the law is clear, when its evidentiary burden was clear, and I would request a closed record on remand. Thank you, counsel. We'll move on to Patrick Bannon. Excuse me. Good morning. May it please the court, Patrick Bannon on behalf of the United States. I'd like to begin just with the point about McIntosh and the plain text of the guideline here. In addressing this issue with regard to the application note, you know, in the briefing and in district court, you know, the government's briefing focused on the applicability of the application note. And I think the application note is consistent with the application of the plain text of the guideline in this case. But in terms of the questions that were asked about this panel's decision with regards to McIntosh, I don't think the panel is itself governed by McIntosh in terms of the applicability of the capable of accepting language. And I don't think there's really any dispute that this firearm in question here is capable of accepting a 15-round or more magazine. The evidence in the record, and even Mr. Green acknowledges that it comes standard with a 20-round magazine. So in terms of its capability of accepting the 20-round or the 15-round or more magazine, I think that's been established. And so if this panel were to determine that, you know, in terms of parsing the plain text of this guideline provision, that deference or reference to the interpretive commentary here in application note two is not necessary, then I think the decision is an easy one that this is a firearm that's capable of accepting. But to your adversary's point, then, does the United States agree that every semi-automatic firearm is going to be subject to this enhancement? Well, I think, and as was addressed in McIntosh, that it is common, of course, that semi-automatic firearms are not only, as this one is sold standard with large capacity magazines, but are capable of accepting them. And I think this court addressed that in McIntosh. But I think that's the reason for the enhancement for the commission was the potential harm of a large capacity magazine. So I think even though the fact that most or potentially all semi-automatic firearms would be capable of accepting a large capacity magazine, you know, that is the text of the guideline and even the interpretive commentary to address that. Is there a surplusage problem with that interpretation? Not necessarily, Your Honor. I think, actually, in McIntosh, the court gets into that where, you know, if it's not an issue where there's actual evidence in the record to suggest that it's capable of accepting, and I think in footnote four, the court addresses that, if there's no evidence in the record that the firearm, you know, is capable of accepting a 15-round or more magazine, then it wouldn't apply. But here, there is evidence in the record, and it was discussed at sentencing multiple times that this firearm could be questioned. But what if the evidence is, I've got a fixed-capacity semi-automatic weapon. I'm really cold, I'm sorry. Semi-automatic weapon. And the evidence is, that's all I possessed. It doesn't have any way of switching out the magazine, but then the government calls an expert that says, this could be modified to accept an LCM. Well, I think the modification there is different than, you know, as the panel brought up before, you know, the guideline text itself talks about possibility, not actuality, and the language is capable of accepting, and so I think... But because it could be modified, it is capable. That's my question. Well, I think then that is, if there's evidence in the record to show that a firearm is capable of accepting a large-capacity magazine, then I think the... Because it could be modified. That's enough. Well, I don't know if that's necessarily the case, but that is not the case in this... No, I understand that. I'm asking you a hypothetical. Yeah, I'm not sure with the hypothetical if, you know, I guess any firearm could be modified in any way. I don't know if that's necessarily the answer here for this guideline provision. No, Mr. Fannin, I understand that today you're arguing that we might not need to resort to application note at all because, you know, perhaps the language of the enhancement itself is clear, and so Mr. Green would get the enhancement. But why should we apply that enhancement, you know, accept that argument today when the government didn't make it in the district court and didn't make it in its brief on appeal? Well, to be clear, our position is not that we're raising that argument now for the first time. I was just addressing the court's position that it's not bound by the arguments that were raised. Our position is, as it was in district court and is here, even if there is... If the panel were to reference the application note, that there was no clear error here referencing that. I was just making the point that... And why is there no clear error here? Well, I think the... Understand that Mr. Green disagrees with the district court's decision. You know, this is a clear error review, and under that standard, the court must accept the factual determination of the fact finder unless there's... The record is completely devoid of a support. And I think there is evidence that was clearly before the district court about this firearm being capable of accepting and then having attached to it a magazine of greater than 15 rounds. Well, it may be capable of accepting, sure, because there were the specs. Second part. But the... Right, the second part, when Officer Campetti clarified his testimony was that the store owner only said a magazine was attached. So he didn't say the size of the magazine. Well, I agree that in the record, probation officer Campetti first said that when he talked to the store owner that there was a large capacity magazine attached. And then the second comment he made was obviously much less clear in the record, but I don't think he refuted what he said previously about the large capacity magazine being attached. I think pretty clear. He said, actually, no. A magazine. He said, I believe all he said, all the store owner said was that it was a magazine. The district court said, okay. I thought it pretty much clarified the answer. I mean, part of this goes to the point we were having, the conversation we were having with your colleague on the other side, right? What's going to happen on remand, unless the scope of remand is constrained, is it seems as though you're probably going to make the same arguments that could have been made then, right? Someone will testify as to what the capacity of this was and that there were capacities of all sorts in close proximity. And I assume that that's where this is going, but in terms of what's on the record, if the application noticed to apply, I mean, I think the best record might well, the best reading of the record might well be that there was a magazine attached, but we don't know what was it or what it was capable of. Well, I think there's evidence in the record besides just the testimony of Officer Campetti. And I think if the court were to remand, obviously, for Officer Campetti to clarify his statement further, that might solve the issue here. But in terms of the evidence that's in the record now, it's not just the testimony of Officer Campetti. It's the video that's shown, the manufacturer's documents that were submitted to the court, which shows what the firearm looks like with the 20-round magazine. And the argument that was presented to the district court that the manufacturer's documents and the pictures of the firearm appear to be what is in the video. And if you watch the video, that was what was argued to the district court in addition to what Officer Campetti said. So I don't think that the evidence in the record, aside from his testimony, which I understand the two comments he made seem inconsistent with one another, but that's not the only evidence in the record to suggest that this firearm had a capacity magazine attached to it. Can you address if it is remanded, whether or not you believe the government is entitled to offer additional evidence? I believe if the court were to remand for the issue of the factual determination of whether there was a firearm either attached to or in close proximity to, sorry, a large capacity magazine in close proximity or attached to the firearm, that the government would at least be able to clarify Officer Campetti's statement as to his discussion with the firearm store owner, or to present evidence to clarify the court's point as to whether there was a large capacity magazine attached to the firearm. Is the default rule in Roe, is there anything there that says that the government is allowed to clarify testimony that wasn't previously clear? I'm not sure whether, I think it would be up to the discretion of this panel whether the, if it's remanded for additional fact-finding, for example, I think the District Court would conduct additional fact-finding. But understanding as well, though, that in determining whether there was a clear error here, the District Court is well aware of the facts that were presented to it, and the District Court may, again, find that there was, by reponderance of the evidence, you know, evidence that there was a large capacity magazine either attached to or in close proximity to the firearm in question here. Let me just ask you a little bit about close proximity. I understand your argument on close proximity to be, well, it was a gun store, so there must have been some high-capacity magazines in the area. Is that correct? Well, I think the argument in District Court specifically that, and that was raised with District Court that this was a gun store, that there were large-capacity magazines likely in the gun store. But I think that the specific factual issue in the case was that when Officer Campetti reached out to the gun store owner, his question to the gun store owner was essentially to look into that question, whether there were large-capacity magazines for this particular firearm in the gun store. And what the gun store owner told him was there were, there was actually one attached to the firearm. Except Campetti, and then he changed that testimony. So, so I think, I mean, at best that, that negates that, right? So, I mean, setting aside what might have been attached to this, to this firearm, is it the government's position that if you're in a gun store, then there must be large-capacity magazines in this particular gun store? And so the close proximity point would, would go against Mr. Green? Well, I don't think there's, just because of the way that the question was raised in this particular case, I don't think that was firmly established in District Court, that there was absolutely in this particular gun store a large-capacity magazine for this firearm. I will say, though, there is evidence in the record based both on the testimony and the manufacturer's documents that were submitted that this firearm came standard with a large-capacity magazine. So it, that, that was the magazine that the gun would come with. What is a large-capacity magazine? Based on the, this Court's decision in McIntosh and in the guideline commentary, which the Court referred to, it's 15 rounds or more. So it's guidelines, yeah, sorry. Well, if the guidelines were amended, if the commentary were amended to the guidelines and it were changed to, it's a regulatory term in the government's Yes, it's, it's a term that's dictated by the, by the guidelines as, as this Court addressed in McIntosh. I think if, to your point, if the, if the Commission were to amend it, then the threshold would, would change whether it went up or down. And does the, does the, some of the other circuits that have written about close proximity have said that there is like an accessibility component to that? It need not only be nearby in terms of inches or feet away, but, but the defendant would have to have access to the large-capacity magazine. Do you have a view on that? Well, I think the way that, that, that courts have addressed that point of, of close proximity, it's not necessarily that the defendant could, at the time of the offense, just sort of reach out and grab the gun and fire it. I know, for example, in the Gradillo case that this Court cited in McIntosh, which is an 11th Circuit case, the defendant was arrested out in front of his house. The firearm was in a locked safe upstairs. The large-capacity magazine was in a separate ammunition bag that was not in the gun safe. So in terms of close proximity, that Court found that, that, that sufficed for, for close proximity. So in terms of being accessible, I don't think that the standard is that the defendant, for example, could just reach out and, and touch it necessarily. Understanding that accessibility is a language that, you know, has been used, I don't think that close proximity requires some sort of imminent fire ability or something to that, that standard. So if, what if there were a whole stash of large-capacity magazines in a gun store, but in a locked case that the defendant couldn't access? Would, in that, in your view, would that be close proximity? I'm, I'm not sure whether, given the facts of that case, that, that it would, but potentially if, if there were magazines, like I just said, in the Gradillo case, the firearm itself was in a locked case. But I also think, you know, several courts that have addressed this, this specific guideline provision have addressed the issue of, first of all, whether the firearm was, was loaded or not, or whether the magazine was loaded or not, and found that even if an unloaded magazine qualifies for this enhancement. So, so in terms of accessibility and whether or not it's, it's locked, I don't know if necessarily it's, it means that the, the guideline doesn't apply. But, but understanding your point that I think, you know, in certain circumstances, maybe that the district court would disagree with that position. And just to be clear, this is all also coming from the application note. None of this is in the guidelines. Exactly. To get to there, first of all. Can you just comment briefly on, Mr. Green makes much of the sort of fleeting, transitory, and time-limited possession of both the firearm and the magazine of whatever capacity was attached. What, what is, why is that within the boundaries of the statute as well as the guideline? Well, a couple points here, and I see my time is up. I'm happy to answer that question, obviously. But I think there's, there's a couple points. First of all, with, in terms of the underlying offense, that was never challenged in district court or here. I understand that his, his possession of the firearm was fleeting and more fleeting than his co-defendant, Mr. Wong. But he never moved to dismiss the indictment challenging him with, with 922G. And whether or not forfeiture was, you know, a result of that, I think he doesn't raise it in terms of challenging his underlying sentence on, on appeal, and arguably has abandoned away that argument as well on appeal. So in terms of the question being before this court, I think, you know, it hasn't really been raised. But as a second point, the, the fact that his, his possession was, of the firearm was, was brief, I think was addressed by the district court. And that was the reason for the downward variance that he ultimately received, you know, significantly lower than his guideline range. And the court addressed that specifically. It's, it's on appendix page 76, where the court addressed his possession of the firearm and, and compared it to his co-defendant. So I think, you know, first of all, with, with the issue being before this court, and second of all, with the district court having addressed that specific issue, that, you know, it really was, so his offense conduct was, you know, the reason that, at least in part, he received the downward variance that he did. All right. Thank you, counsel. Thank you.  Sorry, I'm happy to go wherever the court would like. I think maybe three brief points that came out of what the government said in its case here. The first is that this, this issue about McIntosh, how much it controls application note two. I mean, we did flag this issue in the opening brief, page 20, footnote 22. I think McIntosh is controlling, but flagged the point. And then the government reads our brief, files its response. Nothing about a, the application note does not is in the government's brief. So that, that issue was not raised in the government's pleading. Today is the first time I'm hearing the government say, don't apply application note two. So to the extent the court is interested in enforcing Dowdell, enforcing forfeiture in waiver against the government, I would encourage the court that we did brief the case with the understanding application note two is what controls. The second point I do want to point out is, um, Judge Freeman, your questions about close proximity. Um, the, um, the, the facts of the case are even worse than large capacity magazines being locked in the gun cabinet in the FFL store. Because I mean, Caltech, uh, this rifle accepts an FN FAL pattern magazine. Um, you can't just shove any magazine into a rifle and expect for it to work. It has to be the right pattern magazine. And the government didn't even prove that there are other Caltech pattern magazines in this store. The most common is AR-10 pattern magazines. Um, I see a lot of Glocks, uh, and I think Smith and Weston pistols sitting out on the counter that Wong touched. None of those magazines would fit into this rifle. So even if there are other large capacity magazines in the store, no evidence whatsoever that any of them would actually fit into this Caltech rifle. Um, and then the third point is that Roe also raised in our opening brief page 19 through 20. Um, I still have not heard the government meet its burden under Roe, which is to present a persuasive reason why fairness dictates the record should be reopened on remand. So I think it is appropriate to invoke Roe and Roe in this case. Um, and then the last thing, uh, Mr. Chappelle will kick me if I don't point it out. The government never even proved that this, this Caltech that was at the, at Schuylkill Gunworks, that it came from the manufacturer. So Schuylkill Gunworks buys used firearms, right? If this FFL, if they bought it used, uh, from a different firearm store or from a private owner, um, that is another link here, another problem here. If this Caltech, um, went from the manufacturer to a store in New Jersey or New York or Maryland first, then we know that, uh, it, there's no way it's got a 20-round magazine because each of those states has capacity limits. I see that my time is up, um, unless there's anything else. Thank you, counsel. The case is submitted.